**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAMON MORENO-CUEVAS, | ) | NO. 3:19-CV-1803 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN SPORTS INTERNATIONAL | ) | |
| d/b/a New York Sports Club (NYSC), *et* | ) | MARCH 24, 2026 |
| *al.*, | ) | |
| *Defendants*. | ) | |

## <u>MEMORANDUM OF DECISION RE: [39] MOTION TO DISMISS</u>

Kari A. Dooley, United States District Judge:

Plaintiff Ramon Moreno-Cuevas, proceeding *pro se*, brings this action against Defendants Town Sports International, d/b/a New York Sports Club ("TSI"), Laura Hoover, Brisvely Garcia, and Tania Hussain (collectively, the "TSI Defendants"), as well as Starwood Retail Partners/Starwood Corp. ("Starwood"),[1] Robyn Rifkin, and Timothy Carlson (collectively, the "Starwood Defendants"), and seven John/Jane Does. *See* Compl., ECF No. 1. Although somewhat opaque,[2] broadly, the Complaint alleges that Defendants conspired to fraudulently induce Plaintiff to sign a sublease agreement for office space within a New York Sports Club ("NYSC") location in West Hartford, Connecticut, only to subsequently extort him into paying a higher rent, and eventually, rescind the lease without cause before its inception date, and convert Plaintiff's property. *See id.* On April 30, 2020,[3] Defendants filed the instant Motion to Dismiss, which

---

[1] Defendants have indicated that "Starwood Retail Partners/Starwood Corp." is not a legal entity, and that the proper Defendant to be named in this case is "Starwood Retail Partners, LLC." *See* MTD at 1 n.1. However, insofar as the Court is herein dismissing all of Plaintiff's claims with prejudice, it need not address or resolve this issue.

[2] The Complaint, with attachments, is 337 pages in length. It is composed of a meandering narrative infused with illogical connections seemingly fueled by paranoia, and it constructs a fanciful series of events which then form the basis of the legal claims asserted. The Complaint also includes extensive legal analysis of the claims asserted.

[3] As discussed below, on March 8, 2021, while the instant Motion was pending, the case was stayed as to all claims in light of the bankruptcy proceedings involving Defendant TSI.

asserts various grounds for dismissal of the Complaint in its entirety, to include, *inter alia*, issues related to service, standing, claim and issue preclusion, and the sufficiency of Plaintiff's allegations. *See* MTD, ECF No. 39. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is dismissed in its entirety.

**Allegations**

The Court assumes the parties' familiarity with the allegations and circumstances underlying this case, and recites herein only those relevant to the adjudication of the instant Motion to Dismiss.

Plaintiff is the sole proprietor of Superb Score, an LLC "that teaches standardized tests." Compl. at ¶ 1. On or about February 2018, Defendant TSI operated a NYSC located at Blue Back Square in West Hartford, Connecticut. *See id.* at ¶¶ 2–3. Defendant Starwood managed the property at Blue Back Square and was Defendant TSI's landlord. *Id.* at ¶ 3. Defendants Hoover, Garcia, and Hussain are officers of TSI.[4] *Id.* at ¶ 2. Defendants Carlson and Rifkin are officers of Defendant Starwood. *Id.* at ¶ 3.

On February 18, 2018, Superb Score signed a sublease agreement with Defendant TSI (the "Sublease"), whereby Superb Score could operate its business out of available office space within the NYSC located at Blue Back Square (the "Office Space"). *See id.* at ¶¶ 4–5. Superb Score and Defendant TSI agreed that Superb Score would move into the Office Space early, and "would start classes on March 1, 2018." *Id.* at ¶ 4. In connection with the Sublease, Defendant Garcia, as "TSI/NYSC's manager in West Hartford," "asked for and received a $2,000,000.00 third-party, liability insurance policy with NYSC/TSI as co-beneficiary." *Id.* at ¶ 6. Plaintiff was given a specially made key for the Office Space, which Defendant Starwood "authorized their exclusive

---

[4]  Defendants Hoover and Garcia were never served and thus, have not been joined as Defendants to this lawsuit.

locksmith to make." *Id.* Plaintiff was also given access to "three small lockers" within the NYSC, "where [he] would place formal clothes and coats to change after working out." *Id.* at ¶ 12. Plaintiff moved into the Office Space during the weekend of February 18, 2018. *See id.* at ¶ 13.

On February 18, 2018, after all of Plaintiff's furniture and equipment were moved into the Office Space, a Blue Back Square security guard approached Plaintiff as he was leaving the building, and informed Plaintiff that "[t]he owner of the building told me to escort you out of the building." *See id.* Plaintiff protested, and demonstrated to the security guard that he was renting the Office Space within the NYSC. *Id.* At that time, the security guard stated "I'll go back to him. I have to find out," and left. *Id.* The following day, Defendant Garcia approached Plaintiff inside the NYSC and told him that "the Landlord had received several complaints about [Plaintiff]," including regarding "an altercation with one of the janitors," "trespassing into the [parking] garages," as well as Plaintiff's purported homelessness, for which he would be "charg[ed] an additional fee." *Id.* at ¶ 14. Plaintiff disputed such accusations. *See id.* at ¶ 15. That same day, Plaintiff followed up with an email "adding to the conversation, modifying concepts, and to review the contract later on." *Id.*

The following day, "the story changed." *Id.* at ¶ 16. Now, Defendant Garcia claimed that TSI did not have the right to sublet the Office Space to Plaintiff; and that its landlord, Defendant Starwood, having been informed of the Sublease, was only willing to authorize it for an additional fee, to be paid by Plaintiff. *See id.* Plaintiff rejected this proposal. *Id.* Then, on February 23, 2018, Plaintiff discovered a business card on his car from Police Officer Cardone, with a note requesting that Plaintiff "call him ASAP." *Id.* at ¶ 18. Plaintiff did so, and the next day, Officer Cardone informed Plaintiff that the Sublease was going to be rescinded, and Plaintiff would be arrested if he was found inside Blue Back Square after business hours. *See id.* "Less than two

minutes later," Defendant Garcia called Plaintiff and, without providing a specific move-out date, informed him that the Sublease had been rescinded. *Id.*

On March 5, 2018, Plaintiff went to the front desk at the NYSC and paid for his locker rentals. *Id.* at ¶ 20. On or about March 6, 2018, Superb Score filed a small claims action against Defendant TSI in Connecticut Superior Court, Small Claims Housing Session (the "Small Claims Action"). *See id.* at ¶¶ 21–23; *see also Superb Score LLC v. New York Sports Clubs (NYSC)/(TSI), West Hartford*, No. HFH-CV18-5003328-S. In its Small Claims Writ, Superb Score asserted many of the same allegations regarding the TSI Defendants' conduct, including regarding the Sublease, the rescission thereof, etc., and sought to recuperate $4,999.00 in claimed losses, including its moving expenses. *See* Compl., Appendix C, ECF No. 1-1 at 75–83. On the evening of March 6, 2018, Defendant Garcia, accompanied by "one or two body guards," confronted Plaintiff inside the NYSC, and threatened to throw out the clothing he was storing in his rented NYSC lockers if he did not remove it. Compl. at ¶ 21. Plaintiff removed the clothes from the lockers and placed them inside the Office Space. *See id.* Thereafter, in response to the Small Claims Action, Defendant TSI changed the locks to the Office Space, thereby detaining the "working equipment, furniture, and clothes" stored therein. *Id.* at ¶ 23. On March 8, 2018, Defendant Hoover sent an email canceling Plaintiff's NYSC membership, forbidding him from speaking to any TSI or NYSC employees, and banning him from the NYSC premises. *See id*. Defendant Hoover further informed Plaintiff that if he wanted to obtain his belongings from the Office Space, he would need to schedule an appointment with her. *Id.*

On June 20, 2018, a hearing was held in connection with the Small Claims Action. *See id.* at ¶ 25; *see also Superb Score*, No. HFH-CV18-5003328-S at Entry No. 104.00. On the day of the hearing, Plaintiff's friend, who had accompanied Plaintiff to court, observed Defendant Garcia

4

"going toward the judges' chambers." *Id.* at ¶ 26. Nearly an hour later, and forty minutes late, the courtroom opened "when Garcia came out of the backrooms." *Id.* Following the hearing, Small Claims Magistrate Edward McAnaney found in favor of Defendant TSI on Superb Score's monetary claim, and instructed the parties to make arrangements for the removal of Superb Score's property from the NYSC premises within 45 days. *See id.* at ¶¶ 31–32; *see also Superb Score*, No. HFH-CV18-5003328-S at Entry No. 104.00.

**Procedural History**

Plaintiff filed the Complaint on November 14, 2019. *See* Compl., ECF No. 1. Plaintiff alleges that through the foregoing conduct, Defendants conspired to—and succeeded in—forcing Plaintiff out of the Office Space under false pretenses, in violation of various state and federal laws. Liberally construed, the Complaint asserts: (i) a civil RICO claim against all Defendants, for conspiring to violate various federal statutes, including, *inter alia*, wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and the Hobbs Act (18 U.SC. § 1951) ("Count One"); (ii) a 15 U.S.C. § 45 and Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110, *et seq*. ("CUTPA") claim against Defendant TSI and Defendant Starwood, arising from their unfair and deceptive business practices ("Count Two"); (iii) a Fair Debt Collection Practices Act ("FDCPA") claim against the TSI Defendants ("Count Three"); (iv) fraud claims against all Defendants, arising from their "fraud in the inducement" of the Sublease and subsequent "fraudulent overcharge" of Plaintiff's credit card ("Count Four" and "Count Five"); (v) a reckless misrepresentation claim against all Defendants ("Count Six"); (vi) breach of contract claims against Defendant TSI and Defendant Starwood ("Count Seven" and "Count Eight"); (vii) a violation of the implied covenant of good faith and fair dealing claim against all Defendants ("Count Nine"); (viii) a state law civil conspiracy claim against all Defendants ("Count Ten"); (ix) a tortious interference claim against

Defendant Starwood ("Count Eleven"); (x) a "wrongful detention and conversion" claim against all Defendants, arising from their preventing Plaintiff from retrieving the property he had moved into the Office Space ("Count Twelve"); (xi) a larceny claim against Defendant TSI ("Count Thirteen"); and (xii) an unjust enrichment claim against Defendant TSI ("Count Fourteen"). *See generally id.* Plaintiff seeks compensatory damages in the amount of $77,632,506.00. *Id.* at ¶ 468. He also asserts that Defendants should be subject to hundreds of millions of dollars in punitive damages, *see id.* at p. 172, as well as a constructive trust in the amount of $778,800,000.00, arising from their unjust enrichment and involvement in the foregoing events, *id.* at p. 162.

On February 11, 2020, the Court terminated Plaintiff Superb Score, insofar as an artificial entity cannot proceed *pro se*, and any person who represents an artificial entity must be an attorney licensed to practice law, which Plaintiff Moreno-Cuevas, as the sole proprietor of Superb Score, is not. *See* ECF No. 18. On April 30, 2020, Defendants filed a Motion to Dismiss the Complaint. MTD, ECF No. 39. On May 18, 2020, Plaintiff filed a Motion for Summary Judgment. ECF No. 56. On June 1, 2020, the Court instructed Defendants to respond to Plaintiff's Motion for Summary Judgment on or before thirty days after this Court's ruling on the instant Motion to Dismiss. ECF No. 60. On June 23, 2020, Plaintiff filed an opposition to Defendants' Motion to Dismiss. Pl. Opp., ECF No. 63. On July 7, 2020, Defendants filed their reply brief in further support of the Motion to Dismiss. ECF No. 70.

On September 14, 2020, Defendant TSI filed a Notice advising that TSI had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware, thereby automatically staying this case as to Defendant TSI, pursuant to Section 362(a) of the Bankruptcy Code. *See* ECF No. 77. On March 8, 2021, over Plaintiff's objection, the Court further stayed this civil action as to the Non-Debtor Defendants as well, pending resolution of the bankruptcy

proceedings. *See* ECF No. 94, 105, 106. On February 17, 2023, the Court denied Plaintiff's requests to lift the stay of proceedings because the bankruptcy proceedings had not concluded. *See* ECF No. 105. Over two years later, on October 7, 2025, the Court, having learned that Defendant TSI's underlying bankruptcy proceeding had concluded as of December 26, 2023, instructed Plaintiff to file a Status Report advising the Court as to whether he intends to proceed with his claims in this case. ECF No. 106. On October 12, 2025, Plaintiff filed a response indicating that he does intend to continue prosecuting this case, pending complete exhaustion of his appellate rights arising under Defendant TSI's underlying bankruptcy proceedings, to include the United States Supreme Court's decision on his request for reconsideration of its denial of certiorari. *See* ECF No. 107.

On November 20, 2025, Defendants filed a Status Report indicating that this case should be closed in light of: (1) Plaintiff's failure to file a proof of claim in Defendant TSI's underlying Bankruptcy Proceedings; (2) Plaintiff's failure to object to the ensuing imposition of a permanent injunction barring all pre-petition claims (the "Plan Injunction"), such as the instant claim; and (3) the Bankruptcy Court's denial of Plaintiff's request(s) for relief from the Plan Injunction, which was subsequently affirmed by both the District Court and the Third Circuit. ECF No. 112. Therein, Defendants further asserted that due to the foregoing, Plaintiff's claims and causes of action in this lawsuit are barred, and there is no further relief available to Plaintiff. *See id.* Accordingly, on November 21, 2025, the Court instructed Plaintiff to show cause why this case should not be closed. ECF No. 113. Thereafter, Plaintiff filed a response to the Court's Order to Show Cause (ECF No. 115), as well as a Motion for Default Judgment (ECF No. 114) and an

Amended Motion for Default Judgment (ECF No. 116).[5]  Defendants filed an objection to such

Motions on January 2, 2026, and Plaintiff filed a reply on January 5, 2026.  ECF Nos. 117, 118.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting

*Twombly*, 550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements," are not entitled to a presumption of truth.

*Iqbal*, 556 U.S. at 678.  Nevertheless, when reviewing a motion to dismiss, the court must accept

well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's

favor."  *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).  Moreover,

where a plaintiff proceeds *pro se*, the court must construe his pleadings liberally, and interpret the

complaint to raise the strongest arguments it suggests.  *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d

Cir. 2007).

---

[5] Plaintiff's Motions for Default Judgment assert that judgment should enter in Plaintiff's favor, in light of Defendants' failure to respond to Plaintiff's Motion for Summary Judgment, or file an Answer.  *See* ECF Nos. 114, 116.  But, to date, and during the pendency of their Motion to Dismiss, Defendants have been under no obligation to either file an Answer or respond to Plaintiff's Motion for Summary Judgment.  *See* ECF No. 60; *see also* Fed. R. Civ. P. 12(a)(4). Accordingly, Plaintiff's Motions for Default Judgment are **DENIED**.  Likewise, and for avoidance of doubt, to the extent the Court has herein dismissed the Complaint in its entirety with prejudice, Plaintiff's Motion for Summary Judgment is **DENIED**.

**Discussion**

In seeking to dismiss the Complaint, Defendants argue that: (1) Plaintiff's claims against the Starwood Defendants fail for insufficient service of process; (2) Plaintiff lacks standing to assert claims on behalf of Superb Score; (3) the Complaint is barred by the doctrines of *res judicata*, collateral estoppel, and/or *Rooker-Feldman*; (4) any FDCPA claim is time-barred; and (5) the Complaint fails to state a claim against the Starwood Defendants. Defendants further argue that Plaintiff's claims against the TSI Defendants must be dismissed insofar as Plaintiff failed to file a proof of claim in the TSI Bankruptcy or object to the Plan Injunction. *See* ECF No. 112. Plaintiff contends that: (a) he has standing to bring his claims on behalf of Superb Score; (b) he has plausibly pleaded each of his claims; and (c) that service upon Defendant Starwood was proper. The Court agrees with Defendants that any claims against the TSI Defendants are foreclosed by Plaintiff's failure to file a proof of claim in the TSI Bankruptcy or object to the Plan Injunction; and that the Complaint fails to state a plausible claim for relief against the Starwood Defendants.[6]

The TSI Bankruptcy and the Plan Injunction[7]

TSI and its debtor affiliates voluntarily filed for Chapter 11 bankruptcy on September 14, 2020. *See In re Town Sports International, LLC*, No. 20-BK-12168 (CTG) (D. Del.) (hereinafter, "*In re TSI I*") at ECF No. 1. During the Chapter 11 proceedings that ensued, TSI duly identified

---

[6] Because the Court is dismissing all of Plaintiff's claims on these grounds, it need not evaluate the legion of additional arguments for dismissal set forth in the Motion to Dismiss.

[7] Though not raised in the Motion to Dismiss (which was filed long before the resolution of the TSI Bankruptcy), Defendants have made clear that they believe the Court should dismiss all of Plaintiff's claims in light of his failure to file any proof of claim or object to the Plan Injunction. *See* ECF No. 112 ("Defendants submit that Plaintiff's claims and causes of action against Defendants in this lawsuit are barred and there is no further relief available to Plaintiffs."). As discussed herein, the Court generally agrees. However, the Court does not agree that Plaintiff's claims against the non-debtor, Starwood Defendants were extinguished by virtue of the TSI Bankruptcy. Indeed, Starwood is an entirely separate corporate entity and was not a party to the TSI Bankruptcy. Indeed, even if Plaintiff had filed a proof of claim in the TSI Bankruptcy and received a distribution from TSI's estate, such claim necessarily would not have encompassed the allegations against the Starwood Defendants. Therefore, the Court has, where appropriate, considered the arguments for dismissal as to the Starwood Defendants set forth in Defendants' Motion to Dismiss.

9

Plaintiff as holding a contingent, unliquidated, and disputed claim, and notified him of the procedure and "bar date" for filing a proof of claim in the Bankruptcy Court. *See Town Sports Int'l, LLC v. Moreno-Cuevas*, No. 24-1020, 2024 WL 3963680, at *1 (3d Cir. Aug. 28, 2024) (hereinafter, "*In re TSI III*"). Plaintiff opted not to file any proof of claim, ostensibly believing that if he declined to take part in the TSI Bankruptcy, he could proceed with his claims in this action. *Id.* Meanwhile, TSI moved forward with a court-approved process for the sale of substantially all of its assets, and in December 2020, the Bankruptcy Court approved a Plan that designated a Plan Administrator to wind down TSI's affairs. *Id.* Such Plan also established a Non-Released Claims Trust to oversee the administration of general unsecured claims, such as those asserted in this case. *Id.* At that time, the Court further imposed the Plan Injunction, which permanently barred pre-petition claims. *Id.* Plaintiff did not object to the confirmation of the Plan, and accordingly, the Plan Administrator and the Non-Released Claims Trustee reconciled any claims filed in the TSI Bankruptcy and made distributions to creditors. *Id.*

Throughout the course of the TSI Bankruptcy, Plaintiff, determined to preserve his right to a jury trial and obtain relief through the instant action, repeatedly asked the Bankruptcy Court to lift the automatic stay. *Id.* The Bankruptcy Court, in turn, construed such requests as seeking relief from the Plan Injunction, and denied them. *Id.* The Bankruptcy Court further explicitly instructed Plaintiff that TSI's estate was the exclusive source of recovery for the claims asserted in this action, and that his failure to file a proof of claim in the TSI Bankruptcy had foreclosed his ability to recovery from TSI. *See id.* Indeed, the Bankruptcy Court informed Plaintiff that even if the Plan Injunction was modified to permit him to litigate this action, he was not entitled to a distribution from TSI's estate and therefore had no available source of recovery. *Id.*

Plaintiff appealed the Bankruptcy Court's denial of his fourth and final request for relief from the Plan Injunction to both the District Court, and later, the Third Circuit. *See id.* On December 21, 2023, the District Court affirmed the Bankruptcy Court's ruling, finding that the Bankruptcy Court did not abuse its discretion in denying Plaintiff's motion for relief from the Plan Injunction. *See In re Town Sports Int'l*, No. 23-CV-472 (MN), 2023 WL 8827193, at *4 (D. Del. Dec. 21, 2023) (hereinafter, "*In re TSI II*"). On August 28, 2024, the Third Circuit affirmed the District Court's ruling. *See In re TSI III*, 2024 WL 3963680 at **1–2. The Third Circuit emphasized that the Plan itself did not discharge Plaintiff's claims against the TSI Defendants; rather, he was not entitled to a distribution from TSI's estate under the Plan, because he did not file a proof of claim. *Id.* at *2. Additionally, the Third Circuit rejected Plaintiff's argument that "by declining to file a proof of claim, he retained both his right to a jury trial in the Connecticut action and his right to recover on a favorable judgment in that action." *Id.* On March 24, 2025, the Supreme Court summarily denied Plaintiff's petition for a writ of certiorari. *Moreno-Cuevas v. Town Sports Int'l, LLC*, 145 S. Ct. 1441 (2025).

In light of the foregoing resolution of the TSI Bankruptcy, to include the various motions filed by Plaintiff therein, the Court concludes that Plaintiff's claims against the TSI Defendants have been relinquished. Indeed, as the District Court remarked in *In re TSI II*, "claimants face a choice when determining whether to file a proof of claim in a bankruptcy case: assert a proof of claim, and submit to the jurisdiction of the bankruptcy court . . . , or do not submit a proof of claim, and be barred from collecting on a debt and sharing in a pro rata share of a bankruptcy estate. [Plaintiff] chose not to file a proof of claim in the [TSI Bankruptcy], thereby relinquishing any rights to receive a distribution from [TSI's] estate on account of his contingent, unliquidated, and disputed prepetition claim. 2023 WL 8827193 at *7.

Here, when the TSI Defendants filed a Notice of Bankruptcy, *see* ECF No. 77, the instant case was stayed pursuant to Section 362(a) of the Bankruptcy Code.  Plaintiff subsequently sought, in both the instant case and in connection with the TSI Bankruptcy, to lift the automatic stay, based on an incorrect view that declining to take part in the TSI Bankruptcy would permit Plaintiff to proceed with his claims in this action.  Plaintiff did not file any proof of claim in the TSI Bankruptcy.  The TSI Bankruptcy moved forward, resulting in the Plan, the Plan Injunction, and eventually, the reconciliation of any claims properly filed in the TSI Bankruptcy, and the related distribution of estate assets to creditors.  Meanwhile, Plaintiff did not object to the Plan, or the Plan Injunction, and instead persisted in his ill-fated efforts to pursue his claims against the TSI Defendants in the instant case.  And eventually, such efforts were unequivocally rejected by the District of Delaware and the Third Circuit, and declined for consideration by the Supreme Court. This Court cannot revisit these determinations.  *See In re XO Commc'ns, Inc.*, 301 B.R. 782, 791 (Bankr. S.D.N.Y. 2003) (It is well-settled law that a claimant must "file a timely proof of claim against a debtor's estate in chapter 11 bankruptcy in order to participate in the debtor's reorganization," and that "upon confirmation of a debtor's reorganization plan, a debtor is discharged from any debt that arose before the date of such confirmation") (citing Bankruptcy Rule 3003(c)), *aff'd*, No. 04-CV-1489 (LAK), 2004 WL 2414815 (S.D.N.Y. June 14, 2004). Accordingly, Plaintiff's claims against the TSI Defendants are necessarily extinguished, and must be dismissed.[8]

---

[8]  The individual TSI Defendants have plainly been sued for conduct undertaken within the scope of their employment. Thus, under a theory of *respondeat superior*, Defendant TSI is the real party in interest, and any claims against the individual TSI Defendants would have been payable by Defendant TSI through a distribution from its estate under the Plan. *See 2 Nat. Place, LLC v. Reiner*, 152 Conn. App. 544, 557 (2014) ("Under the doctrine of *respondeat superior*, a master is liable for the wil[l]ful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business.").  For that reason, such claims also lack any available source of recovery and are extinguished.

The Starwood Defendants

Having disposed of the claims against the TSI Defendants, the Court turns to Plaintiff's remaining claims against the Starwood Defendants. Even liberally construed, the factual allegations set forth in the Complaint only arguably implicate the Starwood Defendants in Plaintiff's RICO, civil conspiracy, tortious interference, and reckless misrepresentation claims.[9] As set forth below, the Complaint fails to plausibly allege any of those claims against the Starwood Defendants.

*RICO*

First, the Complaint fails to state a viable civil RICO claim against the Starwood Defendants. "To state a RICO claim, a plaintiff must plead facts sufficient to support (1) a RICO violation, (2) an injury to his business or property, and (3) a proximate causal connection between the injury and a substantive RICO violation." *Hudson v. Gerson*, No. 23-CV-8876 (BMC), 2025 WL 1755710, at *4 (E.D.N.Y. June 25, 2025). "A RICO violation requires allegations of '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity.'" *Id.* (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013)). "To state a RICO claim, the plaintiff must allege two or more related 'predicate acts' that constitute a 'pattern' of racketeering activity." *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 537 (S.D.N.Y. 2014); *see also* 18 U.S.C. § 1961(5)).

Further, where, as here, the Complaint alleges fraud as a predicate act, the allegations are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "a party must state with particularity the circumstances constituting fraud or

---

[9] Indeed, Plaintiff's remaining claims all plainly arise from either the Sublease itself, to which the Starwood Defendants were not parties, or from the TSI Defendants' conduct alone.

13

mistake." "Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."[10]  *4 K & D Corp.*, 2 F. Supp. 3d at 538 (citation omitted).  Relatedly, courts are required to scrutinize such civil RICO claims "early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Hudson*, 2025 WL 1755710 at *5 (citing *Holmes v. Parade Place, LLC*, No. 12-CV-6299, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013)); *see Fuji Photo Film U.S.A. v. McNulty*, 640 F. Supp. 2d 300, 309 (S.D.N.Y. 2009) ("Civil RICO should not be used to transform a garden variety fraud or breach of contract case . . . into a vehicle for treble damages.") (internal quotation marks omitted).

For purposes of stating a "pattern" of racketeering activity against the Starwood Defendants, the Complaint, even liberally construed, has only arguably alleged that the Starwood Defendants committed predicate acts of wire fraud.[11]  But even this predicate act is not plausibly alleged.

"Where a plaintiff in a RICO claim alleges racketeering activity based on the predicate acts of violating the mail or wire fraud statutes, he or she must [plausibly allege] three elements: (1)

---

[10]  As to "the other elements of a RICO claim – such as non-fraud predicate acts or the existence of an 'enterprise' – a plaintiff's complaint need satisfy only the 'short and plain statement' standard of Rule 8(a)." *Hudson*, 2025 WL 1755710 at *4 (citing *D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014)).

[11]  Plaintiff fails to sufficiently assert additional predicate acts arising under 18 U.S.C. §§ 1512, 1513, and 1951, which necessarily involve the TSI Defendants only, even if plausibly alleged.  And any suggestion that the Starwood Defendants are somehow implicated in such conduct by virtue of their control over the security of Blue Back Square and/or their connections to law enforcement, *see* Compl. at ¶¶ 80–84, are entirely fanciful.  Plaintiff also fails to plausibly assert a predicate act of bank fraud, insofar as, *inter alia*, 18 U.S.C. § 1344 "only prohibits 'a scheme or artifice . . . to defraud a *financial institution*,' and a RICO plaintiff who is not a financial institution under the statute lacks standing or injury to bring a RICO claim based on bank fraud as the predicate act." *Edmonds v. Seavey*, No. 08-CV-5646 (HB), 2009 WL 2949757, at *6 (S.D.N.Y. Sept. 15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir. 2010) (emphasis in original) (citing *Hilgeford v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 3:08-CV-699, 2009 WL 302161, at *6 (E.D.Va. Feb.6, 2009)).

14

scheme to defraud, including proof of intent; (2) money or property as object of [the] scheme; [and] (3) use of mails or wires to further the scheme." *City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 552 (S.D.N.Y. 2005).  Here, notwithstanding Plaintiff's prolix and wide-ranging Complaint, it is clear that the core impetus for this lawsuit is Defendant TSI's alleged recission of the Sublease secured through false pretenses, and its ensuing restriction of Plaintiff's access to the Office Space, wherein he had moved various personal items and unspecified equipment.  In attempting to set forth a civil RICO claim, Plaintiff alleges that, through this course of conduct, Defendants (to include the Starwood Defendants) engaged in wire fraud.  Yet, the Complaint does not identify any specific use of the wires to further the alleged scheme.  While Plaintiff alleges that Defendant TSI charged his credit card, which might have involved the use of interstate wires, there is no similar allegation with respect to the Starwood Defendants nor any basis to conclude that such a transfer was the object of a fraud scheme orchestrated by both the Starwood Defendants and the TSI Defendants operating *collectively* as an "enterprise."  The claim is speculative, at best, and certainly not supported with adequate factual allegations.[12]  *See Liberty Mut. Ins. Co. v. Blessinger*, No. 06-CV-391, 2007 WL 951905, at *9 (E.D.N.Y. March 27, 2007) (defining "enterprise" as including "a group of persons associated together for a common purpose of engaging in a course of conduct").  To the contrary, Plaintiff alleges that the Starwood Defendants conspired with Defendant TSI to send a "security guard to provoke and then to stage an altercation with Plaintiff and put Plaintiff under duress to soften [him] to accept the rent increase disguised as a penalty for the 'altercation.'"  Compl. at ¶ 68.  This allegation simply does not constitute or even implicate wire fraud.  Accordingly, insofar as Plaintiff's allegations as to wire fraud are wholly

---

[12]  To the extent Plaintiff claims that the relevant racketeering activity consists of Defendant TSI's alleged practice of overcharging NYSC members' accounts, including Plaintiff's, *see* Compl. at ¶ 60–62, such assertions plainly fail to state a RICO claim, and in any event, any such purported racketeering enterprise would necessarily consist only of the TSI Defendants, who have already been dismissed from this case.

implausible, much less pleaded with specificity, *see* Fed. R. Civ. P. 9(b), Plaintiff has failed to allege a pattern of racketeering activity, and his civil RICO claim must be dismissed.[13]

*Civil Conspiracy*

The Complaint further fails to plausibly state a common law civil conspiracy claim against the Starwood Defendants.  "To succeed on a claim of civil conspiracy, a plaintiff must prove the following elements: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 114 (D. Conn. 2010).  "A claim for civil conspiracy cannot stand on its own.  It must be based upon some underlying tort cause of action." *Camerota v. Camerota*, No. X07-HHD-CV21-6135978-S, 2025 WL 3033978, at *2 (Conn. Super. Ct. Oct. 22, 2025) (citing *Macomber v. Travelers Property & Casualty Corp.*, 277 Conn. 617, 635–36 (2006)).  Indeed, the Connecticut Supreme Court has explained that a civil conspiracy claim "is for damages caused by acts committed pursuant to a formed conspiracy rather than the conspiracy itself . . . [t]hus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Macomber*, 277 Conn. at 636.

Liberally construed, the Complaint asserts that Defendants formed a conspiracy to defraud Plaintiff and Superb Score as well, perhaps, to commit other torts against Plaintiff, and that the Starwood Defendants took numerous unlawful actions in support thereof, including utilizing a

---

[13] While Plaintiff's failure to allege a pattern of racketeering activity is alone fatal to his RICO claim against the Starwood Defendants, as discussed *infra* in connection with Plaintiff's common law conspiracy claim, the Court is not persuaded that the Complaint sufficiently alleges the existence of an "enterprise" for purposes of his RICO claim. *See Liberty Mut. Ins. Co.*, 2007 WL 951905 at *9 (defining "enterprise" as including "a group of persons associated together for a common purpose of engaging in a course of conduct").

security guard to stage an altercation with Plaintiff, thereby facilitating Defendant TSI's illegal efforts to extract a higher rent from Plaintiff and/or rescind the Sublease and lock Plaintiff out of the Office Space while retaining his property. Fundamentally, Plaintiff's assertions as to the existence of an agreement between the Starwood Defendants to engage in wrongdoing are meandering, unquestionably speculative, wholly conclusory, and therefore, fatally deficient. *See Iqbal*, 556 U.S. at 678. Indeed, Plaintiff's theory, as alleged in the Complaint, would require the trier of fact to make assumption on top of assumption in order to find a conspiratorial relationship between Defendant TSI and Defendant Starwood; nefarious coordination between those two entities in seeking to defraud Plaintiff; an untoward relationship between Defendant Starwood and Blue Back Square's security and/or the West Hartford Police Department; and more generally, the fraudulent intent underpinning Defendants' purported agreement. None of these accusations, and therefore the existence of a conspiratorial agreement, can be reasonably inferred from the factual allegations in Plaintiff's Complaint. *See, e.g.*, *Larobina v. McDonald*, 274 Conn. 394, 409 (2005) (declining to consider conspiracy claim in which "the plaintiff has not made any allegations . . . as to the nature or purpose of any such scheme, or how or why the defendants are attempting to conceal it"); *cf. Lifetouch Nat'l Sch. Studios, LLC v. Walsworth Publ'g Co.*, No. 3:19-CV-1726 (JCH), 2020 WL 5943866, at *3 (D. Conn. Apr. 23, 2020) (permitting conspiracy claim where the plaintiff "plausibly allege[d] the conspiracy through specific factual allegations in the [c]omplaint that are supported by affidavits[,] . . . [and] demonstrate[d] that . . . defendants worked together" to breach their fiduciary duties and misappropriate defendants' proprietary information). Absent any cogent thread linking Plaintiff's allegations, the Complaint simply does not support the

17

inference of the existence of any conspiracy.  Therefore, Plaintiff's civil conspiracy claim against the Starwood Defendants must be dismissed.[14]

*Tortious Interference*

Plaintiff also asserts a tortious interference claim against the Starwood Defendants, arising from their purported interference in Plaintiff's business relations with Defendant TSI.  "A party setting out a tortious interference with business relations claim must establish the following elements: '(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss.'" *Laura Laaman & Assocs., LLC v. Davis*, No. 3:16-CV-594 (MPS), 2017 WL 5711393, at *10 (D. Conn. Nov. 27, 2017) (quoting *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27 (2000)).

Here, Plaintiff alleges that the Starwood Defendants "should be found liable of unlawful interference with business expectancy because they knew about Plaintiffs' business with TSI/NYSC and intentionally interfered with the relationship to breach the lease."  Compl. at ¶ 322. But it is difficult to discern from Plaintiff's allegations how, as a factual matter, the Starwood Defendants intentionally interfered with Plaintiff's business relationship with Defendant TSI.  And to the extent the purported interference arises from the Starwood Defendants' alleged staging of an incident between Plaintiff and the security guard on February 18, 2018, such an accusation is wholly conclusory and unsupported by any factual allegations.  But even if the complaint plausibly alleged facts to support such an accusation, there is no factual nexus alleged between the "staged" incident and Defendant TSI's determination to rescind the purported Sublease, or more to the

---

[14]  The absence of allegations supporting an agreement to engage in tortious wrongdoing is dispositive of this claim. Therefore, the Court does not independently assess whether the Complaint plausibly alleges specific tortious conduct by the TSI Defendants in support of the civil conspiracy claim.  And as discussed, no such tortious conduct by the Starwood Defendants is plausibly alleged.

point, that such a result was Starwood's intention. *See Landmark Investment Group, LLC v. CALCO Construction & Development Co.*, 318 Conn. 847, 868 (2015) ("[N]ot every act that disturbs a contract or business expectancy is actionable.") (internal quotation marks omitted). Again, Plaintiff brings conclusory accusations but fails to provide any factual content in the Complaint to support those accusations. Accordingly, Plaintiff's tortious interference claim against the Starwood Defendants must be dismissed.

### *Reckless Misrepresentation*

The Complaint also purports to name the Starwood Defendants in the claim for "Reckless Misrepresentation." But a close reading of the Complaint reveals that it simply does not. Plaintiff alleges that the TSI Defendants misrepresented TSI's ability to enter the Sublease agreement with Plaintiff, when in reality, Defendant Starwood, as Defendant TSI's landlord, had not permitted TSI to sublease the Office Space. However, Defendant Starwood was unquestionably not a party to the Sublease, and the Complaint sets forth no allegations whatsoever indicating that the Starwood Defendants themselves made any representations to Plaintiff in connection with the Sublease, much less reckless or false ones. As such, Plaintiff's purported reckless misrepresentation claim against the Starwood Defendants must be dismissed.

### Conclusion

For all of the reasons set forth herein, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED in its entirety, with prejudice**. The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of March 2026.

  */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

19